UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| GERMAINE WATKINS | CIVIL ACTION |
| VERSUS | NUMBER 11-617-RLB |
| MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY | CONSENT |

## RULING

Plaintiff, Germaine Watkins ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for disability insurance benefits "under Title II and part A of Title XVIII of the Social Security Act" and her "Application for Supplemental Security Income . . . under Title XVI of the Social Security Act (Tr. 80-87).[1]  Both parties have consented to proceed before a United States Magistrate Judge and the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c).  For the reasons assigned below, the decision of the Commissioner is **REVERSED** and the matter **REMANDED** for further proceedings.

I.      **PROCEDURAL HISTORY**

On or about May 8, 2009, Plaintiff filed the above referenced applications for benefits (Tr. 80-87).[2]  The claim was initially denied and Plaintiff filed a timely request for a hearing that

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])."  References to the record of administrative proceedings filed in this case are designated by "(Tr. [page number(s)])."

[2] The Application Summaries contained in the record are dated May 8, 2009.  The ALJ decision, however, states that the applications were filed on April 24, 2009 (Tr. 13).

was held on July 7, 2010 at which Plaintiff, represented by counsel, appeared and testified (Tr. 23-34).

An unfavorable decision was rendered by the Administrative Law Judge ("ALJ") on August 31, 2010 (Tr. 13-20), finding that Plaintiff was not disabled from September 1, 2004, through the date of the decision.  Plaintiff's request for review was denied by the Appeals Council on July 13, 2011 (Tr. 1). The ALJ's decision rested as the final decision when the Appeals Council denied the claimant's request for review. *See* 20 C.F.R. § 404.981("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . .").  The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g) of the Social Security Act.

## II.    STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

(quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four steps then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). First, the claimant must prove he is not currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  Second, the claimant must prove his impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. §

3

404.1520(c).  At step three the ALJ must conclude the claimant is disabled if he proves that his

impairments meet or are medically equivalent to one of the impairments contained in the Listing

of Impairments.  *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt.

404, subpt. P, app. 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving

he is incapable of meeting the physical and mental demands of his or her past relevant work.  20

C.F.R. § 404.1520(f).

     If the claimant is successful at all four of the preceding steps then the burden shifts to the

Commissioner to prove, considering the claimant's residual functional capacity, age, education

and past work experience, that he is capable of performing other work.  20 C.F.R §

404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform,

the claimant is given the chance to prove that he or she cannot, in fact, perform that work.  *Muse*,

925 F.2d at 789.

     In the ALJ's decision, the ALJ first found that Plaintiff met the insured status

requirements of the Act and that Plaintiff had not engaged in substantial gainful activity since the

alleged onset date. (Tr. 15).  At the second step, the ALJ found that Plaintiff had the following

severe impairments: diabetes mellitus, hypertension, and degenerative disease. (Tr. 15).  At step

three, the ALJ found that Plaintiff did not have an impairment or combination of impairments

meeting or medically equaling one of the listed impairments. (Tr. 15-16).

     The ALJ determined that Plaintiff "has the residual functioning capacity (RFC) to

perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)[3] except that the

claimant must alternate positions throughout the day.  She can occasionally stoop, crouch, crawl,

climb and twist." (Tr. 16).  Later in his analysis, however, the ALJ considered Plaintiff's

---

[3] 20 C.F.R § 404.1567(c) and § 416.967(c) define medium work as that which "involves lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

complaints of pain and its effect on the RFC, and states "that the claimant's residual functional capacity is limited to light work activity." (Tr. 17-18).[4]  In the next paragraph of his decision, the ALJ contradicts that statement and concludes that Plaintiff's RFC is "a narrow range" of medium work subject to the aforementioned limitations.  (Tr. 18).

At the fourth step, the ALJ found that Plaintiff was capable of performing past relevant work as a housekeeper and nursing assistant because such work does not require the performance of work related activities precluded by the claimant's RFC.  The ALJ does not specify the RFC that he applied in reaching this conclusion.  The ALJ additionally found, in the alternative, that although Plaintiff is capable of performing past relevant work, considering her age, education, work experience, and RFC, there are other jobs existing in the national economy that she is also able to perform. (Tr. 18-19).[5]  Based on the Medical-Vocational guidelines cited in the opinion, the RFC used by the ALJ was that of medium work.

The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from the alleged onset date through the date of the ALJ's decision. (Tr. 19).

## IV.    PLAINTIFF'S ALLEGATIONS OF ERROR AND COMMISSIONER'S RESPONSE

Plaintiff alleges that the ALJ erroneously concluded that (1) she had the residual functional capacity to perform medium level work, (2) Plaintiff could perform her past relevant work, and (3) Plaintiff could do unskilled sedentary and light jobs that exist in significant

---

[4] 20 C.F.R § 404.1567(b) and § 416.967(b) define light work as that which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."

[5] Both parties acknowledge uncertainty as to whether the ALJ's analysis at this step concerned an RFC of light work or medium work. (R. Doc. 9 at 8; R. Doc. 12 at 8).  The ALJ's description of Plaintiff's past relevant work (PRW) is consistent with light work yet the ALJ later discusses the "residual functional capacity to perform the full range of medium work" in making his alternative finding regarding whether there exists other jobs in the economy that Plaintiff is able to perform.

numbers in the national economy. (R. Doc. 9).  Plaintiff sets forth three substantive errors that she claims were committed by the ALJ.  First, she claims that the ALJ committed error in failing to accord adequate weight to the opinions of Plaintiff's treating physician. (R. Doc. 9 at 4).  Second, Plaintiff alleges that the ALJ erred in his application of the Medical-Vocational Guidelines (the "Grids"). (R. Doc. 9 at 6).  Finally, Plaintiff alleges that the ALJ erred in failing to make clear whether he denied the claim at step four or step five and whether the denial was premised on a light or medium RFC. (R. Doc. 9 at 8).  Plaintiff specifically alleges that "there is no evidence of record" to suggest that Plaintiff can perform the lifting requirements of medium work. (R. Doc. 10 at 8).

        With respect to the weight afforded to certain medical opinions, the Commissioner responds that the ALJ properly weighed the medical opinion evidence, including that of Plaintiff's treating physician, and properly explained why he afforded less weight to portions of that opinion.  The Commissioner further responds by arguing that the ALJ properly determined Plaintiff's RFC and properly determined that Plaintiff had the ability to perform her PRW as she had done it in the past.  With respect to the application of the Grids, the Commissioner argues that the ALJ made appropriate alternative findings at step four and step five.  The Commissioner concludes by suggesting that because Plaintiff could return to her PRW, as she had actually performed those jobs, any error in the alternative step five finding was harmless. (R. Doc. 12).

V.     ANALYSIS

        A.     Determination of Residual Functional Capacity

        The ALJ is responsible for determining a claimant's residual functional capacity (RFC). *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  In making this determination the ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other

6

information contained in the record, and determine the claimant's ability, despite any physical and mental limitations. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("The inquiry here is whether the record, read as a whole, yields such evidence . . . ."). However, the ALJ may not establish physical limitations or lack of limitations without the support of medical evidence. *Patterson v. Astrue*, No. 08-13, 2008 WL 5104746, at *4 (N.D. Miss. Dec. 1, 2008). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F .3d 31, 35 (1st Cir. 1999) (citation omitted). The ALJ must "consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza*, 219 F.3d at 393.

The ALJ's determination of Plaintiff's RFC is not clear. The ALJ begins his discussion by stating that Plaintiff "has the residual functional capacity to perform medium work . . . except the claimant must alternate positions throughout the day." (Tr. 16). The ALJ later states Plaintiff "can perform medium work, involving lifting/carrying of 25 pounds" without mentioning the need to alternate positions. (Tr. 17). In the next paragraph, the ALJ discusses Plaintiff's complaints of pain and concludes that her "residual functional capacity is limited to light work activity." (Tr. 17). In the paragraph that immediately follows that one, the ALJ states: "The undersigned finds that the claimant's residual functional capacity is reduced to a *narrow range* of medium work." (Tr. 18) (emphasis added). The ALJ then concludes the paragraph with a confusing incomplete sentence regarding the ability to grasp and turn objects. (Tr. 18).[6] The Court cannot reconcile these seemingly inconsistent statements.

---

[6] The full sentence is: "On the ability to grasp and turn objects is necessary as opposed to finer activities, requiring precision use of the fingers in sedentary work." (Tr. 18).

The ALJ begins and ends his RFC analysis with a determination that Plaintiff had a residual functional capacity of medium work subject to certain limitations and later applied the Medical-Vocational Guidelines for medium work.[7]  The regulations explain that: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).  After reviewing the record, the Court finds that the ALJ's determination is not supported by substantial evidence.

In evaluating Plaintiff's medical evidence, the ALJ first looked to her "treating physician" Dr. Saiyid Wahid. (Tr. 17).  Dr. Wahid submitted a functional capacity evaluation in August of 2009 which limited Plaintiff to sitting two hours in an eight-hour workday and standing/walking less than two hours in an eight-hour workday (with usual breaks). (Tr. 17, 340). The evaluation did not indicate that Plaintiff could do any lifting.  The ALJ accorded "less weight" to the opinion of Dr. Wahid by concluding that the severity of the limitations was not supported by Dr. Wahid's progress notes and testing.  The ALJ does not cite to any specific note or test but justifies his decision by observing that Plaintiff "has not required intensive therapy or repeated hospitalizations" and that her "symptoms are controlled with conservative treatment." (Tr. 17).  The ALJ does not explain how these observations relate to the limitations noted by Dr. Wahid.

The ALJ then noted that Dr. Douglas Davidson "evaluated the claimant in July 2009" and concluded Plaintiff is able "to lift/carry/push/pull 10 to 20 pounds based on history alone" (Tr. 17). *See also* (Davidson, M.D., Report, Tr. 348) ("lift/carry or push/pull 10-20 pounds"). Dr. Davidson opined that Plaintiff was able to work within these physical limitations. (Tr. 348).

---

[7] The ALJ applies the Medical-Vocational Guidelines for medium work and specifically references an RFC "to perform the full range of medium work." (Tr. 19).  In doing so he apparently dispenses with the determined limitations without explanation.

After considering these two medical opinions, the ALJ explained that: "the overall objective evidence convinces the undersigned that she can perform medium work, involving lifting/carrying of 25 pounds." (Tr. 17).

Nothing in the decision or the record indicates that Plaintiff is capable of lifting 50 pounds occasionally and 25 pounds frequently (as required for medium work).  In addition to the two medical opinions that contradict the ALJ's determination, the decision does not mention the opinion of Dr. Fred Ruiz, the consultative examiner who performed a "Physical Residual Functional Capacity Assessment" as part of the overall disability determination. *See Hudson v. Apfel*, No. 99-946, 2000 WL 547121, at *3 (N.D. Tex. May 3, 2000) (ALJ's decision was "at best problematic where," among other things, "the decision failed to address the Commissioner's own examining consultant's opinion").  Consistent with Dr. Davidson, Dr. Ruiz determined that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally. (Tr. 314).  Dr. Ruiz ultimately opined that Plaintiff could perform "light work." (Tr. 312).

The ALJ was not at liberty to ignore this medical evidence or substitute his own views where, as in this case, none of the (uncontroverted) medical opinions support the lifting capabilities of an RFC determination of medium work.  Plaintiff complains that the ALJ rejected the opinion of her treating physician, Dr. Wahid, regarding Plaintiff's ability to lift items of certain weights in favor of the opinions of other physicians.  Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician).  "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the

opinion of the treating physician only if the ALJ performs a detailed analysis of the treating

physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d

at 453.[8]  The ALJ did not provide such a "detailed analysis."

      The ALJ, however, is not required to consider each of the six factors set out in *Newton*

when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that

one doctor's opinion is more well-founded than another.'" *Walker v. Barnhart*, 158 Fed. Appx.

534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).  Thus, the ALJ's decision to reject a

treating specialist's opinion must be supported by substantial, contradictory, first-hand evidence

from another physician.  If the decision is so supported, the ALJ is "not required to go through

all six steps in *Newton* [because] . . . the ALJ is responsible for resolving conflicts in the

evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 Fed. Appx.

357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 Fed. Appx. at 534).

An ALJ is free to discredit the opinion of a treating physician when it is contradicted by another

physician — examining or not. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (ALJ

may reject a treating physician's opinion in favor of an examining physician where the evidence

supports a contrary conclusion).

      The ALJ determined Dr. Wahid's medical opinion was not reliable because Plaintiff "has

not required intensive therapy or repeated hospitalization," her symptoms are "controlled with

conservative treatments" and there is "no evidence of end organ damage." (Tr. 17).  While the

ALJ did consider Dr. Davidson's opinion, he did not compare the opinions of Dr. Davidson and

Dr. Wahid or make any finding "as a factual matter that one doctor's opinion is more well-

---

[8] Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2).

founded than another." *Newton*, 209 F.3d at 458.  He did not address any conflicts in their

opinions and did not provide any reason why he accepted one opinion over another.  There is

simply no analysis, under *Newton* or otherwise, for the Court to consider.  Even still, the ALJ's

RFC determination of medium work indicates that the ALJ actually discredited the opinions of

not just Dr. Wahid, but also of Dr. Davidson and Dr. Ruiz.  *See Williams v. Astrue*, 355 Fed.

Appx. 828, 832 n.6 (5th Cir. 2009) ("ALJ may not rely on his own unsupported opinion as to the

limitations presented by the applicant's medical conditions").

      The Court agrees with Plaintiff that the ALJ's RFC determination of medium work is not

supported by substantial evidence.  Because the ALJ proceeded to analyze the remainder of the

sequential analysis in accordance with the erroneous RFC of medium work, and because the

record was not sufficiently developed for the Court to determine how a lesser RFC would apply

in this matter, this error affected Plaintiff's substantial rights.

      **B.**    **Alternative Residual Functional Capacity**

      The Commissioner argues that the record supports a determination that Plaintiff can

perform light work. (R. Doc. 12 at 7-8).  Although both Dr. Davidson and Dr. Ruiz expressed

that opinion, this was not the finding of the ALJ.  In addition, the ALJ found that Plaintiff must

alternate positions throughout the day.  The Commissioner does not explain, and the ALJ does

not find, how this limitation should be addressed. *Cf. Sneed v. Astrue*, No. 08-942, 2009 WL

3448854, at *5 n.2 (W.D. La. Oct. 26, 2009) ("the RFC assessment must be specific as to the

frequency of the individual's need to alternate sitting and standing.") (quoting SSR 96-9p).  Even

if the Court were to find that the record supports a determination that Plaintiff can perform the

lifting requirements of light or sedentary work, the ALJ does not address how the need or

frequency of having to alternate positions may affect her ability to perform such sedentary or

light work. *See, e.g.*, SSR 83-12 (a claimant may have an RFC "of either sedentary or light work except that the person must alternate periods of sitting and standing. . . . Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work."); *Scott v. Shalala*, 30 F.3d 33, 34 (5th Cir. 1994) ("Because [claimant] must alternate between sitting and standing as needed, [claimant]'s exertional capabilities do not fit within the definition of sedentary work."); *Ripley v. Chater*, 67 F.3d 552, 557 n.25 (5th Cir. 1995) ("Having to alternate between sitting and standing in order to work the entire day does not fit within the definition of sedentary work."); *Savoie v. Astrue*, No. 08-1138, 2009 WL 2849596, at *7 (W.D. La. Sept. 1, 2009) (the need to alternate between sitting and standing are limitations not consistent with the full range of light work).

Because the ALJ's RFC determination of medium work contained certain limitations, the record is not sufficiently developed for the Court to now conclude that Plaintiff could perform the full range of light (or sedentary) work without those same limitations.  As set forth below, the Court is therefore unable to determine whether and how those limitations could affect Plaintiff's ability to perform her PRW or whether other jobs exist in the national economy that she could perform.

### C.        Determination that Plaintiff could perform Past Relevant Work

Using his determination of Plaintiff's RFC, the ALJ concluded that Plaintiff failed at step four because she could perform her past relevant work (PRW).  Past relevant work "is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).  Information about the "demands of the claimant's previous work, either as the claimant actually performed it or as generally

performed in the national economy" will also be considered, among other things. 20 C.F.R. §
404.1560(b)(2); *see also* SSR 82-61 (a claimant is not disabled if he or she retains the RFC to
perform (1) the "actual functional demands and job duties" of a previous job; or (2) the
"functional demands and job duties of the occupation as generally required by employers
throughout the national economy"); *Carter v. Heckler*, 712 F.2d 137, 141 (5th Cir. 1983)
(considering claimant's testimony of her previous work along with the Department of Labor's
description of that type of work).

  In making this determination the ALJ will consider the claimant's RFC.  *See* 20 C.F.R. §
404.1545(a)(5)(i) ("[W]e will first use our residual functional capacity assessment at step four of
the sequential evaluation process to decide if you can do your past relevant work.").  Although
the ALJ's actual RFC determination is not sufficiently set forth in his analysis, at steps four and
five the ALJ references the "full range of medium work," a determination not supported by
substantial evidence.[9]

  In his decision, the ALJ concluded that Plaintiff could perform her past relevant work as
a housekeeper and nursing assistant. (Tr. 18-19).  The ALJ gave brief descriptions of both of
these occupations.  A review of the record indicates that these descriptions were based on
information provided by Plaintiff in her "Work History Report" completed on May 20, 2009.
(Tr. 109-117).  The ALJ did not ask any questions about Plaintiff's PRW at the hearing.  In
describing her duties as a supervisory housekeeper, the ALJ stated Plaintiff's "walking, standing,
sitting, and climbing were varied throughout the day." (Tr. 18).  Plaintiff does not indicate that
any lifting was required for this job.  (Tr. 113).  Second, the ALJ described Plaintiff's work as a
nurse's aide/nursing assistant.  The ALJ noted that Plaintiff alternated between "sitting, standing,

---

[9] Any determination of a less strenuous RFC along with any applicable limitations is not sufficiently set forth by the
ALJ to permit review. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (bare and summary conclusions made
without adequate explanation are beyond meaningful judicial review).

13

and walking and lifted no more than 20 pounds." (Tr. 18).  Additionally, she distributed meal trays, helped residents and took vital signs. (Tr. 18).

The Commissioner urges the Court to look to medical evidence and opinions supporting an RFC determination of light work and then conclude that substantial evidence supports a finding that Plaintiff can perform her past relevant work. (R. Doc. 12 at 7).  First, the Court notes that these same opinions were necessarily rejected by the ALJ in determining that Plaintiff could perform medium work.  Second, it is not the Court's place to review the record, reweigh the evidence, and determine Plaintiff's RFC and any applicable limitations based on what the Court believes the ALJ could have meant.  Finally, even if the ALJ determined that an RFC of light work with certain limitations was applicable and supported by the record, the requirements of Plaintiff's PRW are not sufficiently developed in order for the Court to determine whether substantial evidence exists to support the ALJ's determination that Plaintiff failed at step four. *See Slatton v. Colvin*, 12-053, 2013 WL 2392866, at *4 (N.D. Tex. June 3, 2013) (finding substantial evidence to support PRW determination *where vocational expert testified* regarding ability to perform PRW based on an RFC of light work but limited by postural considerations).

The ALJ stated that both positions required Plaintiff to alternate between sitting, standing and walking throughout the day. (Tr. 18).  The record does not indicate, however, how these activities may vary from day to day and the ALJ conducted no inquiry into the same.  Any RFC determination that was made by the ALJ required that Plaintiff be allowed to alternate positions throughout the day.  The record does not indicate whether Plaintiff's prior work as a housekeeping supervisor or nursing aid would allow her to alternate positions in a way to satisfy

14

this RFC limitation.[10] *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980) (the absence of a finding on "the movement requirements of his former job" warranted remand).

The ALJ's determination was only limited to Plaintiff's actual work and he made no finding as to the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  No vocational expert testified.  According to the Department of Labor's Dictionary of Occupational Titles (DOT), the job of nursing assistant is classified as "medium work" requiring frequent lifting of 25 pounds and occasional lifting of 50 pounds. DICOT 355.674-014.  Any determination that Plaintiff can perform such work is not supported by substantial evidence.

### D.     ALJ's Application of Medical-Vocational Guidelines

As an alternative finding that Plaintiff was not disabled, the ALJ applied the Medical-Vocational Guidelines (the "Grids") to determine that other jobs existed in the national economy that she is also able to perform.  The ALJ specifically utilized an RFC "to perform the full range of medium work" and looked to Medical-Vocational Rules 203.19 and 203.12.  As stated above, the ALJ's finding of an RFC for medium work is not supported by substantial evidence and thus his application of the guidelines is in error.

The ALJ then concludes that he is "persuaded that the claimant is able to make an adjustment to unskilled sedentary and light jobs, which exist in significant numbers in the economy." (Tr. 19).  No vocational expert was consulted.  The Fifth Circuit has held "that the Secretary may rely on the medical-vocational guidelines to establish that work exists for a claimant only if the guidelines evidentiary underpinnings coincide exactly with the evidence of disability appearing on the record."  *Scott*, 30 F.3d at 34 (citation omitted); *Lawler v. Heckler*,

---

[10] Indeed, the record reflects that Plaintiff was forced to resign from her employment as a nurse aid due to limitations with her back (Tr. 114).

761 F.2d 195, 197 (5th Cir. 1985) (same).  In addition to the lack of substantial evidence to

support the ALJ's RFC determination, the ALJ's finding that Plaintiff must alternate positions

throughout the day makes application of the guidelines inappropriate for sedentary or light work.

*Scott*, 30 F.3d at 34-35 (holding that the ALJ erred in applying the guidelines when an individual

must alternate between sitting and standing, as a vocational expert should be consulted to clarify

the implications for the occupational base).[11] *See also Phillips v. Astrue*, No. 10-1523, 2011 WL

7049453, at *7 (W.D. La. Nov. 23, 2011) ("the Fifth Circuit has determined that when a claimant

is required to alternate sitting and standing throughout the work day, vocational expert testimony

is required").

       Social Security Ruling 83-12 discusses this limitation in the context of sedentary or light

work:

> [M]ost jobs have ongoing work processes which demand that a worker be in a
> certain place or posture for at least a certain length of time to accomplish a certain
> task. Unskilled types of jobs are particularly structured so that a person cannot
> ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or
> stand, a VS [vocational specialist] should be consulted to clarify the implications
> for the occupational base.

SSR 83-12.

       Finally, to determine a claimant's ability to adjust to other work, age is considered as one

of several vocational factors. *See, e.g.*, 20 C.F.R. § 404.1563 (age); 20 C.F.R. § 404.1560(c)(1)

("We will look at your ability to adjust to other work by considering your residual functional

capacity and the vocational factors of age, education, and work experience, as appropriate in

your case.").

---

[11] The Fifth Circuit in *Scott* also noted that the ALJ erred in applying the guidelines based on the applicant's complaints of pain that may constitute a nonexertional factor that can limit the range of jobs a claimant can perform. *Id.* at 35. Although the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of such symptoms (including pain) are not credible to the extent that they are inconsistent with the RFC determination, the ALJ later stated that the statements regarding pain justified a reduction in the RFC.  If the ALJ has found that the pain limits the range of jobs that Plaintiff can perform, then expert vocational testimony may be required. *Id.*

The ALJ found that Plaintiff was "56 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date." (Tr. 18).  The ALJ went on to state that Plaintiff "subsequently changed age category to advanced age." (Tr. 18).  Considering these two age categories, along with Plaintiff's RFC, education level (limited) and transferability of job skills, the ALJ made the following alternative finding at step five:

> "If the claimant has the residual functional capacity to perform the full range of medium work, considering the claimant's age, education, and work experience, a finding of 'not disabled' would be directed by Medical-Vocational Rule 203.19 and 203.12.  However, the additional limitations have little or no effect on the occupational base of unskilled medium work.  A finding of 'not disabled' is therefore appropriate under the framework of these rules."

(Tr. 19).  This determination is incorrect.

Both of these Rules apply to an RFC of medium work which, as previously discussed, is not supported by the record.

In addition, the age used by the ALJ in applying the guidelines was improper.  A claimant's age is an important factor because the SSA considers "advancing age to be an increasingly limiting factor in the person's ability" to adjust to other work. 20 C.F.R. § 404.1563(a). Under the regulations, any claimant age 55 or older is considered a "person of advanced age." 20 C.F.R. § 404.1563(e).  Within that category is a sub-category for persons "approaching retirement age (age 60 or older)." 20 C.F.R. § 404.1563(e).

Special rules apply to persons of advanced age and those approaching retirement age:

> If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

17

20 C.F.R. § 404.1568(d)(4).  Consistent with this regulation, the Fifth Circuit has held that "the Commission must specifically find that a 60– to 64–year–old claimant has 'highly marketable' skills in order to deny him disability benefits. . . . [T]he failure to make a specific finding on high marketability renders the Commission's decision unsupported by substantial evidence." *McQueen v. Apfel*, 168 F.3d 152, 155-56 (5th Cir. 1999).

Generally, "the claimant's age as of the time of the decision governs in applying the regulations." *Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987) (Noting "[t]he fact that a claimant who is unable to engage in such activity at the time of the decision may have been able to do so at some point in the past goes to the question of the onset date, not the question of disability." *Id.* at 781); *see also Rikard v. Astrue*, No. 07-162, 2009 WL 736210, at *3 (N.D. Miss. March 18, 2009) ("Age is determined at the time of the decision, not at the time of the application or the hearing."); *Walhood v. Sec'y of Health & Human Servs.*, 875 F. Supp. 1278, 1284 (E.D. Tex. 1995) (same).

The ALJ incorrectly used Plaintiff's age at the "alleged disability onset date" and some subsequent date — which is not indicated in the decision — instead of Plaintiff's age at the time of the decision. (Tr. 18).  Neither age category stated in the decision, approaching advanced age or of advanced age, are correct.

On August 31, 2010, the date of the decision, Plaintiff was 62 years old and classified as a person "closely approaching retirement age." 20 C.F.R. § 404.1563(e).  As a 62 year old individual, the ALJ should have determined whether Plaintiff had highly marketable skills. The decision states that the "[t]ransferability of job skills is not material" and that Plaintiff is capable of "unskilled medium work." (Tr. 18, 19).  Clearly the ALJ failed "to make a specific finding on

18

high marketability," which renders the Commissioner's decision unsupported by substantial evidence. *McQueen*,168 F.3d at 155.

## VI.    CONCLUSION

Accordingly, under sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner of Social Security is hereby **REVERSED**, and this case is **REMANDED** to the Commissioner for further proceedings consistent with the opinion of the Court, including the presentation and consideration of any further relevant medical, vocational or other evidence developed by the parties.  The Commissioner shall forward a copy of the Court's opinion to the officer hearing the matter on remand.

Signed in Baton Rouge, Louisiana, on September 20, 2013.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**